# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MONTANA CONSUMER COUNSEL,
                    *Petitioner,*

THE INTEGRYS GROUP; AMERICAN
PUBLIC POWER ASSOCIATION; PUBLIC
SERVICE COMPANY OF NEW MEXICO;
TUCSON ELECTRIC POWER COMPANY;
PACIFICORP; TRANSMISSION ACCESS
POLICY STUDY GROUP; NATIONAL
RURAL ELECTRIC COOPERATIVE
ASSOCIATION; TRANSMISSION
DEPENDENT UTILITY SYSTEMS; THE
PPL COMPANIES; INDUSTRIAL
CUSTOMERS: PJM INDUSTRIAL
CUSTOMER COALITION; INDUSTRIAL
ENERGY CONSUMERS-PENNSYLVANIA;
INDUSTRIAL ENERGY USERS-OHIO;
NEPOOL INDUSTRIAL CUSTOMER
COALITION; COALITION OF MIDWEST
TRANSMISSION CUSTOMERS;
SOUTHEAST ELECTRICITY CONSUMERS
ASSOCIATION; SOUTHWEST
INDUSTRIAL CUSTOMER COALITION;
WEST VIRGINIA ENERGY USERS
GROUP; ELECTRIC POWER SUPPLY
ASSOCIATION,
                    *Intervenors,*

              v.

FEDERAL ENERGY REGULATORY
COMMISSION,
                    *Respondent.*

No. 08-71827

FERC No.
RM04-7-000

18945

GEORGE JEPSEN,* Attorney General
of the State of Connecticut; LISA
MADIGAN, Attorney General of the
State of Illinois; PETER F.
KILMARTIN,* Attorney General of
the State of Rhode Island,
                           *Petitioners,*

AMERICAN PUBLIC POWER
ASSOCIATION; COALITION OF
MIDWEST TRANSMISSION CUSTOMERS;
DESERET GENERATION &
TRANSMISSION CO-OPERATIVE, INC.;
INDUSTRIAL ENERGY CONSUMERS-
OHIO; INDUSTRIAL ENERGY
CONSUMERS-PENNSYLVANIA;
INTEGRYS ENERGY GROUP, INC.;
INTEGRYS ENERGY SERVICES,
INCORPORATED; NEPOOL INDUSTRIAL
CUSTOMER COALITION; NATIONAL
RUAL ELECTRIC COOPERATIVE
ASSOCIATION; PJM INDUSTRIAL
CUSTOMER COALITION; SOUTHEAST
ELECTRICITY CONSUMERS
ASSOCIATION; SOUTHWEST
INDUSTRIAL CUSTOMER COALITION;
TRANSMISSION ACCESS POLICY
STUDY GROUP;

---

*George Jepsen is substituted for his predecessor, Richard Blumenthal, as Attorney General of the state of Connecticut; Peter F. Kilmartin is substituted for his predecessor, Patrick Lynch, as Attorney General of the state of Rhode Island. *See* Fed. R. App. P. 43(c)(2).

UPPER PENINSULA POWER COMPANY;
WEST VIRGINIA ENERGY USERS
GROUP; WISCONSIN PUBLIC SERVICE
CORPORATION,
              *Petitioners-Intervenors,*

ELECTRIC POWER SUPPLY
ASSOCIATION,
                          *Intervenor,*

              v.

FEDERAL ENERGY REGULATORY
COMMISSION,
                          *Respondent,*

DUKE ENERGY CORP.; LOWER
MOUNT BETHEL ENERGY, LLC; PPL
BRUNNER ISLAND, LLC; PPL
COLSTRIP I, LLC; PPL COLSTRIP II,
LLC; PPL EDGEWOOD ENERGY,
LLC; PPL ELECTRIC UTILITIES
CORPORATION; PPL ENERGYPLUS,
LLC; PPL GREAT WORKS, LLC;
PPL HOLTWOOD, LLC; PPL MAINE,
LLC; PPL MARTINS CREEK, LLC;
PPL MONTANA, LLC; PPL
MONTOUR, LLC; PPL SHOREHAM
ENERGY, LLC; PPL SUSQUEHANNA,
LLC; PPL UNIVERSITY PARK, LLC;
PPL WALLINGFORD ENERGY, LLC;
PACIFICORP; SHELL ENERGY NORTH
AMERICA (U.S. L.P.); TUCSON
ELECTRIC POWER COMPANY,
              *Respondents-Intervenors.*

No. 08-74439
FERC No.
FERC-697-A

PUBLIC CITIZEN, INC.; COLORADO
OFFICE OF CONSUMER COUNSEL;
PUBLIC UTILITY LAW PROJECT OF
NEW YORK, INC.,
                    *Petitioners,*

ELECTRIC POWER SUPPLY
ASSOCIATION,
                    *Intervenor,*

            v.

FEDERAL ENERGY REGULATORY
COMMISSION,
                    *Respondent.*

No. 08-74443

FERC No.
FERC-697-A

OPINION

On Petition for Review of an Order of the
Federal Energy Regulatory Commission

Argued and Submitted
June 8, 2011—Portland, Oregon

Filed October 13, 2011

Before: Raymond C. Fisher, Ronald M. Gould, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Ronald M. Gould

---

## COUNSEL

Lynn N. Hargis, Public Citizen, Inc. and Scott L. Nelson (argued), Public Citizen Litigation Group, Washington, D.C.; Richard Blumenthal, Attorney General for the State of Connecticut, John S. Wright and Michael C. Wertheimer, Assistant Attorneys General, New Britain, Connecticut; Lisa Madigan, Attorney General for the State of Illinois, Michael Scodro, Solicitor General, Janice A. Dale, Assistant Attorney General, Chicago, Illinois; Patrick C. Lynch, Attorney General for the State of Rhode Island, Providence, Rhode Island, for the petitioners.

Michael A. Bardee, General Counsel, Robert H. Solomon (argued), Solicitor, Carol J. Banta, Attorney, Washington, D.C., for respondent Federal Energy Regulatory Commission.

Ashley C. Parrish (argued), David G. Tewksbury, and Angela M. Butcher, King & Spalding LLP, Washington, D.C.; Jesse A. Dillon, PPL Services Corp., Allentown, Pennsylvania; Donald A. Kaplan and John Longstreth, K&L Gates LLP, Washington, D.C., for the intervenors.

---

## OPINION

GOULD, Circuit Judge:

Petitioners Montana Consumer Counsel, Public Citizen, Inc., Colorado Office of Consumer Counsel, Public Utility

Law Project of New York, Inc., and the state attorneys general for Connecticut, Illinois, and Rhode Island seek review of a final order of Respondent the Federal Energy Regulatory Commission ("FERC"). Petitioners bring a facial challenge to the order, contending that the order violates FERC's governing statutes. We must decide whether the market-based regulatory policy established by FERC's order is permissible under the law. FERC asserts that it has improved on its prior regulatory policies by enhancing its up-front tests for market power and reinforcing its ongoing oversight of market-based rates. Petitioners contend that FERC has not done enough. We have jurisdiction to review final orders of FERC under 16 U.S.C. § 825l(b) and we deny the petition.

## I.   Background

FERC's statutory mandate is set forth in the Federal Power Act ("FPA"), 16 U.S.C. §§ 824-824w. The FPA requires, and charges FERC with ensuring, that "[a]ll rates and charges made, demanded, or received" by power wholesalers be "just and reasonable." 16 U.S.C. § 824d(a). All rates and charges for sales and transmission of power are subject to FERC's review. §§ 824d(a), (d), (e). The FPA requires every public utility to file with FERC "schedules showing all rates and charges . . . together with all contracts which in any manner affect or relate to such rates, charges . . . ." § 824d(c). Any change in a rate, charge, or contract requires notice, publicly filed with FERC, sixty days in advance of the change "[u]nless the Commission otherwise orders." § 824d(d).

In the early 1990s, FERC began moving to a regulatory policy that allowed sellers of wholesale electricity to file "market-based" rates with FERC. In the years that followed, FERC varied its implementation of the market-based policy by making adjustments in response to industry and consumer feedback and in response to decisions of the federal appellate courts. Most recently, in Order Number 697, published July 20, 2007, FERC codified the existing limited market-based

policy, along with multiple enhancements, in a final rule. Under Order 697, sellers who elect to participate in the market-based policy must be pre-screened by FERC, and must show that they lack (or have adequately mitigated) both horizontal (energy generation) and vertical (energy transmission) market power. According to FERC, the screening process enables it to "measure market power at both peak and off-peak times, and to examine the seller's ability to exercise market power unilaterally and in coordinated interaction with other sellers." When a seller passes the screening process, FERC adopts a presumption that the seller does not have market power, though intervenors may present evidence to rebut that presumption. Sellers who fail the screening process are presumed to have market power, and are then given the opportunity to rebut the presumption, mitigate the market power, or adopt cost-based rates. After passing the screening process, or successfully rebutting or mitigating FERC's presumption of market power, a seller may be authorized by FERC to file a market-based rate. A seller who has obtained authorization must file an updated market-power analysis every three years.[1] If the seller has gained market power, the authorization will be revoked. In addition, sellers must provide quarterly reports of all transactions and the contractual terms governing those transactions, to be filed electronically with FERC. Authorized sellers must also notify FERC within thirty days of changes in status that might affect their eligibility to file market-based rates. Sellers must comply with FERC's other rules and regulations, and are subject to FERC's enforcement mechanisms.

Order 697 became effective September 18, 2007. The published order took into account public comments from a range of sources, including wholesalers, customers, and public interest organizations. Petitioners and other interested parties

---

[1]Sellers who control less than 500 MW of power generation and meet other criteria are in "Category 1" and are exempt from the ongoing market-power-analysis requirement.

requested rehearing on several grounds, including the grounds asserted in this petition. On April, 21, 2008, in Order 697-A, FERC responded to the requests, but denied rehearing. Specifically, FERC rejected Petitioners' view that it did not have authority to implement the market-based rates program and that the program violated the FPA.

After FERC filed Order 697-A, Petitioners and other parties filed petitions for review in the federal appellate courts. All but three petitions were eventually withdrawn. The remaining three petitions, with case numbers 08-71827, 08-74443, and 08-74439, were consolidated and are before us. Petitioners contend (1) that FERC, by relying solely on the market to regulate rates, has violated its statutory obligation to ensure that rates are just and reasonable; and (2) that the market-based rates policy, which allows sellers to file a market-based rate and does not require sellers to give sixty-days advance notice of changes in market prices, violates the express terms of the FPA. We discuss each contention below.

## II.    Standard of Review

We must set aside agency actions that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." Administrative Procedure Act, 5 U.S.C. § 706(2)(C). Though we are the "final authority on issues of statutory construction," *Am. Rivers v. FERC*, 201 F.3d 1186, 1194 (9th Cir. 1999), we owe "[d]eference . . . to FERC's interpretation of the FPA, the law it is charged with administering." *Cal. Dep't of Water Res. v. FERC*, 489 F.3d 1029, 1036 (9th Cir. 2007) (citing *Cal. Trout, Inc. v. FERC*, 313 F.3d 1131, 1133-34 (9th Cir. 2002)). Our analysis of FERC's interpretation of the FPA is governed by the familiar standard set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842 (1984). *Port of Seattle, Wash. v. FERC*, 499 F.3d 1016, 1026 (9th Cir. 2007); *Am. Rivers*, 201 F.3d at 1194. Under *Chevron*, a court reviewing an agency's construction of a statute addresses two questions:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the . . . question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. at 842-43 (footnotes omitted). "If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005). Petitioners must do more than demonstrate that FERC's policy is a bad idea. *Chevron* requires they demonstrate that FERC has violated an unambiguous command of Congress, or adopted an impermissible interpretation of the FPA.

## III.   Discussion

## A.   "Just and Reasonable" Rates

Petitioners contend that FERC's market-based rates policy impermissibly equates market rates with "just and reasonable" rates in violation of the FPA. 16 U.S.C. § 824d. According to Petitioners, the market-based rates policy is incompatible with the FPA because it calls for FERC to "rely on the market" to set rates that are just and reasonable. Petitioners contend that FERC cannot outsource its regulatory duties to the "Invisible Hand" of the market, and note that the Supreme Court has ruled that "the prevailing price in the marketplace cannot be the final measure of 'just and reasonable' rates mandated by

the Act." *Fed. Power Comm'n v. Texaco Inc.*, 417 U.S. 380, 397 (1974).

First, Petitioners assert that FERC's market-power screening is inadequate because it evaluates only the market power of individual sellers, not the competitiveness of the market as a whole. Second, Petitioners contend that FERC must provide substantial evidence that competition will drive prices to fair and reasonable levels. Third, Petitioners attack FERC's reporting requirements for authorized market-based rate sellers, contending that the reporting requirements are not sufficiently rigorous, and that even if FERC enforces the requirements, it has "no benchmark for the justness and reasonableness of market-based rates" beyond whether the seller has market power or the ability to manipulate the market. Finally, Petitioners contend that FERC has no intention to review the filed reports for the justness and reasonableness of rates; rather, FERC will review reported data only to check for evidence of market power or manipulation.

### 1. The Competitiveness of the Market

**[1]** Petitioners' first contention—that FERC, before authorizing market-based rates, must first determine that a market is competitive—ignores the holdings of the federal courts on this issue. We addressed nearly identical issues in *California ex rel. Lockyer v. FERC*, 383 F.3d 1006 (9th Cir. 2004). In that case, we agreed with the D.C. Circuit that "[i]n a competitive market, where neither buyer nor seller has significant market power, it is rational to assume that the terms of their voluntary exchange are reasonable, and specifically to infer that the price is close to marginal cost, such that the seller makes only a normal return on its investment." *Id.* at 1013 (quoting *Tejas Power Corp. v. FERC*, 908 F.2d 998, 1004 (D.C. Cir. 1990)) (internal quotation marks omitted). We did not hold, or even suggest, that FERC must make a specific finding that a market is competitive in addition to screening for market power. After our decision in *Lockyer*, the D.C. Cir-

cuit held that "what matters is whether an individual seller is able to exercise anticompetitive market power, not whether the market as a whole is structurally competitive." *Blumenthal v. FERC*, 552 F.3d 875, 882 (D.C. Cir. 2009). In light of these authorities, we reject Petitioners' contention that FERC has an additional obligation, beyond screening individual sellers for market power, to assess the overall competitiveness of the market.

## 2. Empirical Evidence

**[2]** Petitioners contend that FERC must conduct an "empirical analysis" or offer "substantial evidence" that competition among sellers will drive rates to reasonable levels. We disagree. To support their argument, Petitioners cite *Tejas*, which faulted FERC for assuming, without analysis or substantial evidence, that competition would keep rates "in reasonable check." 908 F.2d at 1004-05. But *Tejas* did not require FERC to show, through analysis or evidence, that rates in a competitive market will necessarily be reasonable. On the contrary, the court reasoned that, if buyers and sellers did not have market power, it would be "rational to assume that the terms of their voluntary exchange are reasonable." *Id.* at 1004. In that case, because FERC assumed—wrongly and without evidence—that sellers lacked market power, it did not meet its obligation to ensure that rates were just and reasonable. *Id.* But here FERC's order requires, through a screening process, the collection of empirical data on sellers' market power before it authorizes the filing of market-based rates. If a seller passes the market-power screening, FERC presumes that the seller's prices will be just and reasonable. Petitioners are correct that the Supreme Court, in *Texaco*, held that the market price "cannot be the final measure of 'just and reasonable' rates." 417 U.S. at 397. But in the next sentence, the Court explained that, in that case, concentration in the industry and monopolistic forces had distorted the market. *Id.* at 397-98. In fact, the Court noted that the actual market price was not the "true" market price and explained that the "true"

market price would be the "just and reasonable rate." *Id.* at 398. Because the market was distorted, the agency could not rely on the market to drive prices to just and reasonable levels —the "true" market price. But by contrast in this case, FERC has adopted a rigorous screening process to detect market power.[2] We reject Petitioners' contention that FERC lacks evidence to support its policy.

### 3.   Reporting Requirements

**[3]** Petitioners contend that FERC's plan to monitor transactions through regular reports filed by market-rate sellers is "much less stringent than the *Lockyer* court understood." In our opinion in *Lockyer*, we assumed that FERC would require authorized market-rate sellers to file a market-power analysis every four months. 383 F.3d at 1013. Petitioners assert, and FERC concedes, that authorized sellers will instead file an updated market-power analysis only every three years. Additionally, Petitioners note that FERC will exempt from market-power analysis Category 1 sellers, who control less than 500 MW of generation and meet other criteria. Apart from these two matters, Petitioners have not pointed to any action taken by FERC that loosens reporting requirements from those contemplated by our holding in *Lockyer*. Because we approved of the requirements in *Lockyer*, the question before us here is whether these two changes—pertaining to frequency of evaluating market power and exempting Category 1 sellers—are sufficient cause for us to invalidate the market-based rates policy that we otherwise approved in our prior *Lockyer* holding. They are not.

---

[2]We recognize the possibility that FERC in some cases may fail to detect market power due to lack of enforcement or ineffective screening protocols. In that event, parties may challenge FERC in court under existing law to force FERC to comply with its own orders. The petition before us is a facial challenge to Order 697, and the record here does not enable us to review what FERC does in practice in particular cases.

**[4]** While there is a difference between reporting every three years and reporting every four months, we cannot say that requiring triennial reports constitutes an abuse of FERC's "broad discretion to establish effective reporting requirements." *Id.* The precise nature and timing of FERC's reporting requirements are within the agency's discretion. As long as the requirements are sufficient in frequency to ensure compliance with FERC's statutory and regulatory obligations, FERC is within its discretion to set an appropriate schedule for the required reports. For similar reasons we defer to FERC's decision to exclude Category 1 sellers from market-power analysis. These two changes are not so substantial that they invalidate the policy we generally approved in *Lockyer*.[3]

### 4. Reviewing Reports for Market Power and Manipulation

Petitioners object that FERC "promises only to examine reported rates to determine if [the rates] suggest that sellers have acquired market power or engaged in manipulative practices" and that there is "no remedy to correct unreasonable rates or charges." Stated another way, Petitioners contend that FERC will review reports and data only to determine whether sellers have market power, not whether rates are just and reasonable. Petitioners assert that FERC has no "objective" standard, other than the theoretical market rate, for evaluating whether rates are just and reasonable.

**[5]** Our role in determining whether rates are just and reasonable is limited. "The statutory requirement that rates be 'just and reasonable' is obviously incapable of precise judicial definition, and we afford great deference to the Commission in its rate decisions." *Morgan Stanley Capital Grp. v. Pub.*

---

[3]FERC has the power to investigate a seller for market power during the interim period between triennial market-power reports, upon complaint or discovery of changed market conditions, and may revoke market-based rate authority from sellers found to have market power.

*Util. Dist. No. 1 of Snohomish Cnty., Wash.*, 554 U.S. 527, 532 (2008). The Supreme Court has long held that the statutory command that rates be "just and reasonable" means that courts must balance "the investor and the consumer interests," and "[i]f the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry . . . is at an end." *Fed. Power Comm'n v. Hope Natural Gas Co.*, 320 U.S. 591, 602-03 (1944); *see also In re Permian Basin Area Rate Cases*, 390 U.S. 747, 767 (1968) ("[C]ourts are without authority to set aside any rate selected by the Commission which is within a 'zone of reasonableness.' " (quoting *Fed. Power Comm'n v. Natural Gas Pipeline Co. of Am.*, 315 U.S. 575, 585 (1942))).

FERC's discretion is not without limit. FERC may not determine in advance that the prevailing market rate is by definition just and reasonable. *Texaco*, 417 U.S. at 397. Such a policy would be regulation in name only. Nor may FERC, in an ambiguous order, assure the public that it will adjust prices when rates are "unreasonably high considering appropriate comparisons with highest contract prices for sales by large producers or the prevailing market price for intrastate sales." *Id.* at 396. Comparisons of the rates charged by sellers to the rates charged by other sellers are insufficient—such comparisons tell FERC nothing about whether the rates are just and reasonable. FERC may not substitute prevailing market prices for its own judgment.

**[6]** But the law permits the approach embodied in Order 697. FERC has determined that it can ensure that rates are just and reasonable by indirectly regulating the wholesale market. Where sellers do not have market power or the ability to manipulate the market (alone or in conjunction with others), it is not unreasonable for FERC to presume that rates will be just and reasonable. *See La. Energy & Power Auth. v. FERC,* 141 F.3d 364, 365 (D.C. Cir. 1998) ("Where there is a competitive market, [FERC] may rely on market-based rates in lieu of cost-of-service regulation to ensure that rates satisfy

[the just and reasonable] requirement.”); *Elizabethtown Gas Co. v. FERC*, 10 F.3d 866, 870-71 (D.C. Cir. 1993) (holding that a truly competitive market “provides strong reason to believe that [a seller] will be able to charge only a price that is ‘just and reasonable’ ”). Contrary to Petitioners’ assertion that FERC has no standard for evaluating reported data, FERC has confirmed that it will monitor the data to ensure that the reported transactions are consistent with the data expected of a competitive, unmanipulated market. FERC is able to evaluate the reported data to determine whether the average prices charged by a seller are comparable to the average prices that would be charged in a competitive market where no sellers were able to exercise market power. If the data are consistent with a competitive market, FERC may properly assume that the charged rates fall within a zone of reasonableness.[4] As we affirmed in *Lockyer*, “[t]he principle justifying this approach as ‘just and reasonable’ [is] that ‘[i]n a competitive market, where neither buyer nor seller has significant market power, it is rational to assume that the terms of their voluntary exchange are reasonable, and specifically to infer that the price is close to marginal cost, such that the seller makes only a normal return on its investment.’ ” 383 F.3d at 1012-13 (quoting *Tejas*, 908 F.2d at 1004). Consumers, competitors, and other complainants may challenge, through FERC’s processes and the courts, the determination that markets are competitive and that rates are just and reasonable. FERC may sua sponte or upon complaint investigate sellers to determine whether they are unjustly or unreasonably exercising market power and, in its discretion, remedy such violations through rebates and disgorgement of profits. By screening for market power before authorizing market-based rates, and by continually monitoring sellers for evidence of market power, FERC has adopted a permissible approach to

---

[4]FERC is not restricted to this formulation of “just and reasonable” rates; rather, it is a reasonable formulation among others that FERC may use in its discretion.

fulfilling its statutory mandate to ensure that rates are just and reasonable.

Were we to reach a different conclusion, we would nevertheless be bound by our prior decision on this question. We held in *Lockyer* that "there is nothing inherent in the general concept of a market-based tariff that violates the FPA." *Lockyer*, 383 F.3d at 1014. There, we noted that FERC was "not contending that approval of a market-based tariff based on market forces alone would comply with the FPA." *Id.* at 1013. Rather, "the crucial difference" between previous market-based regulatory policies rejected by the courts and the policy at issue in *Lockyer* was "the dual requirement of an ex ante finding of the absence of market power *and* sufficient post-approval reporting requirements."[5] *Id.* We are bound by our decision in *Lockyer* that "market-based tariffs do not per se violate the FPA." *Id.* at 1013 n.5.

Petitioners suggest that the Supreme Court may disagree with our holding in *Lockyer* and the holdings of the D.C. Circuit validating the per se legality of the market-based rate policy. The Supreme Court has recently observed: "We have not hitherto approved, and express no opinion today, on the lawfulness of the market-based-tariff system, which is not one of the issues before us." *Morgan Stanley*, 554 U.S. at 538. Further, the Court noted: "We reiterate that we do not address the lawfulness of FERC's market-based-rates policy, which assuredly has its critics. But any needed revision in that policy is properly addressed in a challenge to the policy itself . . . ." *Id.* at 548. Petitioners have taken up the Supreme Court's invitation, and have challenged the policy itself. But as the

---

[5]Of course, monitoring is not enough—FERC must have the tools to act when markets fail, and it must use those tools to ensure that customers pay only just and reasonable rates. Without enforcement, there is little reason to believe that sellers will police themselves. We are satisfied for purposes of this facial challenge that FERC has those tools. Petitioners and other parties are free to challenge FERC's implementation of its market-based rates policy in an as-applied challenge.

Supreme Court recognized, "[b]oth the Ninth Circuit and the D.C. Circuit have generally approved FERC's policy of market-based tariffs." *Id.* at 538. We upheld the facial legality of market-based rates under the FPA in *Lockyer*, and we are bound by our precedent. *In re Osborne*, 76 F.3d 306, 309 (9th Cir. 1996). The Supreme Court's reservation of judgment in *Morgan Stanley* does not disturb or cast doubt on our decision in *Lockyer*. In any event, one could not correctly say that the mere reservation of the issue by the Supreme Court in *Morgan Stanley* sufficiently undermines the rationale of *Lockyer* so as to free us from following it. *Cf. Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (establishing the standard under which a three-judge panel may disregard a prior precedent of our circuit).

## B.   Filed Rates and the Sixty-Days-Notice Requirement

Petitioners contend that the FPA expressly commands that changes in rates be filed with FERC before they go into effect. Petitioners rely on the following provisions of the FPA:

(a) Just and reasonable rates

All rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges shall be just and reasonable, and any such rate or charge that is not just and reasonable is hereby declared to be unlawful.

* * *

(c) Schedules

Under such rules and regulations as the Commission may prescribe, every public utility shall file with the

Commission, within such time and in such form as the Commission may designate, and shall keep open in convenient form and place for public inspection schedules showing all rates and charges for any transmission or sale subject to the jurisdiction of the Commission, and the classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services.

(d) Notice required for rate changes

Unless the Commission otherwise orders, no change shall be made by any public utility in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after sixty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the sixty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.

16 U.S.C. §§ 824d(a), (c)-(d).

Petitioners contend that § 824d(d) plainly requires a filing sixty days in advance of any change in rates by a public utility. According to Petitioners, sellers that participate in the market-based rate policy by selling power at market-based rates will necessarily violate this requirement, because the market price will fluctuate in ways that are unforeseeable.

Under the market-based-rate policy, an authorized seller files a market-based rate one time, and after initial approval FERC does not require the seller to file notice of subsequent changes in the actual price charged for electricity (though the utility continues to be subject to FERC's ongoing monitoring and reporting requirements). On the theory that "rate" means price, Petitioners claim that § 824d(d) explicitly requires sixty days' notice, and that FERC is statutorily barred from negating that requirement.

[7] But FERC has broad discretion to construe the FPA's notice and filing requirements, as evidenced by the restrictive preface to § 824d(d)'s notice requirement: "Unless the Commission otherwise orders . . . ." § 824d(d). FERC contends that under the market-based policy, "a rate change is initiated when a seller applies for authorization of market-based pricing, not when it subsequently enters into negotiated rates." In other words, the "rate" filed by authorized power wholesalers is the "market rate," and that rate does not "change" even though the prices charged by the wholesalers may rise and fall with the market.

[8] Applying *Chevron*, we first ask whether Congress unambiguously expressed its intent in the text of the FPA. Petitioners contend that § 824d(d) is unambiguous, and that the market-based policy constitutes a clear violation. We disagree. Given the context of § 824d(d)'s notice requirement, including the overall flexibility evident in the FPA's other provisions and, particularly, the statutory instruction that the notice requirement applies "[u]nless the Commission otherwise orders," the statute does not clearly prohibit the filing of market-based rates. In fact, it is at least arguable that the statute clearly authorizes FERC to make an exception to the notice requirement for market-based rates.

[9] But even assuming that the statute does not clearly authorize the exception, and that its meaning is not clear one way or the other, the question for us is whether FERC's inter-

pretation of § 824d(d)'s notice requirement is a permissible one. We conclude that it is. FERC's assertion that a rate "change" occurs only once, when an authorized seller files a market-based rate, is a reasonable interpretation. The FPA does not define initial rates versus changed rates. *Otter Tail Power Co. v. FERC*, 583 F.2d 399, 404 (8th Cir. 1978) (holding that, in order to reject FERC's determination of what constitutes a rate "change," the court "must find that the decision cannot be rationally reconciled with the terms of the Act"). Given the flexibility afforded FERC by the statute's express terms, FERC's definition of a rate "change" is not impermissible.

Moreover, in *Lockyer* we were squarely presented with this question. *See* Petitioners' Opening Br., No. 02-73093, 2002 WL 32178975 (Dec. 30, 2002) ("After-the-Fact Reporting of Rates for 'Informational Purposes' Writes Section [824d(d)] Out of the Statute and Eliminates FERC's Ability to Protect Consumers By Making Rates Effective Subject to Refund."). Though we did not explicitly address § 824d(d) in *Lockyer*, we undoubtedly recognized that this question was before us. *See* 383 F.3d at 1011-12 (discussing the "filed rate doctrine," and observing that FERC had, a decade before, begun to allow the filing of market-based rates). Faced squarely with that issue, we held "that market-based tariffs do not per se violate the FPA." *Id.* at 1013 n.5. Petitioners attempt to distinguish that holding by claiming that "*any* discussion of whether after-the-fact reporting of *changes* in rates satisfies the separate and very specific requirement of § 824d(d) that sellers give 60 days' advance notice of *any* change in a rate or charge by filing" is "[w]holly absent" in *Lockyer*. While in that case we did not discuss specifically the section of California's opening brief about the § 824d(d) filing requirement, we nevertheless rejected California's facial challenge to the market-based policy. *See id.* at 1014 ("[T]here is nothing inherent in the general concept of a market-based tariff that violates the FPA . . . .").

We decline Petitioners' invitation to reject here the notification policy that we approved in *Lockyer*. Even if we had not already decided this question, the text of the FPA provision requiring notification is susceptible to more than one interpretation. In light of that ambiguity, we cannot say that FERC's construction is impermissible. *See Nat'l Cable & Telecomm. Ass'n*, 545 U.S. at 980 ("If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation.").

## IV.   Conclusion

[10] The parties to this dispute raise policy issues of exceptional importance. We recognize that the questions here considered impact real-world energy markets, industries, and consumers. Plainly the well-being of consumers, and not regulatory inertia, should be the touchstone. But we emphasize that our role is limited by statute and the holdings of the Supreme Court. Our review is that of a federal appellate court, not a policy analyst. The question before us here is not whether we think market-based rates are a good idea; instead, it is whether the market-based rate policy embodied in Order 697 exceeds FERC's authority as conferred by the FPA. Taking into account *Chevron* deference, the law of our circuit, other relevant precedent, and the direction of the Supreme Court as to how we should approach such administrative law issues concerning federal agencies, we conclude that Order 697, as presented to us in this petition, does not per se violate the FPA.[6]

**PETITION DENIED.**

---

[6]We leave open the possibility that Petitioners or other parties will succeed in an as-applied challenge to FERC's implementation of the order.