**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE PEOPLE OF THE STATE OF
CALIFORNIA, ex rel. Kamala D.
Harris, Attorney General; PUBLIC
UTILITIES COMMISSION OF THE
STATE OF CALIFORNIA; PACIFIC GAS
& ELECTRIC COMPANY; SOUTHERN
CALIFORNIA EDISON;
     *Petitioners*,

v.

FEDERAL ENERGY REGULATORY
COMMISSION,
     *Respondent*,

SHELL ENERGY NORTH AMERICA
(US), L.P.; TRANSCANADA ENERGY
LTD.; MPS MERCHANT SERVICES,
INC.; MIECO, INC.; HAFSLUND
ENERGY TRADING LLC; MERRILL
LYNCH CAPITAL SERVICES, INC.;
KOCH ENERGY TRADING, INC.;
ILLINOVA CORPORATION;
COMMERCE ENERGY INC.;
ALLEGHENY ENERGY SUPPLY
COMPANY LLC;
    *Respondents-Intervenors*.

No. 12-71958

FERC No.
EL02-71-036

OPINION

On Petition for Review of an Order of the
Federal Energy Regulatory Commission

Argued and Submitted
February 11, 2015—San Francisco, California

Filed April 29, 2015

Before: Sidney R. Thomas, Chief Judge and M. Margaret
McKeown and Richard R. Clifton, Circuit Judges.

Opinion by Chief Judge Thomas

### SUMMARY[*]

### Federal Energy Regulatory Commission

The panel granted a petition for review brought by the people of the state of California and related parties challenging a series of orders issued by the Federal Energy Regulatory Commission on remand following the panel's decision in *California ex rel. Lockyer v. FERC*, 383 F.3d 1006 (9th Cir. 2004), concerning market-based energy tariffs.

In *Lockyer*, the panel held that FERC could authorize market-based energy tariffs, so long as that regulatory framework incorporated both an ex ante marker power analysis and enforceable post-approval transaction reporting.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel remanded because FERC had not appropriately implemented the market-based tariff.

The panel held that FERC structured the remand proceedings in a manner contrary to the terms of the *Lockyer* decision. The panel further held that FERC omitted a necessary component of the market-based tariff approved in *Lockyer* by insisting on proof of market concentration under its hub-and-spoke test as a precondition to any relief for reporting deficiencies. The panel held that reliance on the hub-and-spoke market share measure alone immunized sellers from any consequence for failure to report market transactions and ignored the agency's statutory charge under § 205 of the Federal Power Act: to determine whether sellers charged a "just and reasonable" rate. The panel remanded for further proceedings.

---

**COUNSEL**

Kevin J. McKeon (argued), Judith D. Cassel, and Whitney E. Snyder, Hawke McKeon & Sniscak LLP, Harrisburg, Pennsylvania; Kamala D. Harris, Attorney General of California, Mark Breckler, Chief Assistant Attorney General, and Martin Goyette, Senior Assistant Attorney General, San Francisco, California; David M. Gustafson, Deputy Attorney General, Oakland, California, for Petitioner.

Frank R. Lindh, Sarah R. Thomas, Christopher E. Clay, Candace J. Morey, and Charlyn A. Hook, Public Utilities Commission of the State of California, San Francisco, California, for Petitioner Public Utilities Commission of the State of California.

Richard L. Roberts and Catherine M. Giovannoni, Steptoe & Johnson LLP, Washington, D.C.; Russell C. Swartz, J. Eric Isken, and Russell Archer, Southern California Edison Co., Rosemead, California, for Petitioner Southern California Edison Company.

Stan Berman, Eric Todderud, and Heather Curlee, Sidley Austin LLP, Seattle, Washington; Mark D. Patrizio and Joshua Levenberg, Pacific Gas and Electric Co., San Francisco, California, for Petitioner Pacific Gas and Electric Company.

Beth G. Pacella (argued), Senior Attorney, David L. Morenoff, Acting General Counsel, and Robert H. Solomon, Solicitor, Federal Energy Regulatory Commission, Washington, D.C., for Respondent.

David C. Frederick (argued), Scott H. Angstreich, and Brendan J. Crimmins, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Washington, D.C., for Respondents-Intervenors Shell Energy North America (US), L.P., TransCanada Energy Ltd., MPS Merchant Services, Inc., MIECO, Inc., Hafslund Energy Trading LLC, Merrill Lynch Capital Services, Inc., Koch Energy Trading, Inc., Illinova Corporation, Commerce Energy Inc., and Allegheny Energy Supply Company LLC.

Jeffrey D. Watkiss, McDermott Will & Emery LLP, Washington, D.C., for Respondent-Intervenor Shell Energy North America (US), L.P.

Kenneth L. Wiseman, Mark F. Sundback, William M. Rappolt, and Allison E. Hellreich, Andrews Kurth LLP,

Washington, D.C., for Respondent-Intervenor TransCanada Energy Ltd.

John N. Estes III and Karis Anne Gong, Skadden, Arps, Slate, Meagher & Flom LLP, Washington, D.C., for Respondents-Intervenors MPS Merchant Services, Inc. and Illinova Corporation.

Steven A. Weiler and Robert C. Fallon, Stinson Leonard Street LLP, Washington, D.C., for Respondent-Intervenor MIECO, Inc.

Stephen Angle and Damien R. Lyster, Vinson & Elkins L.L.P., Washington, D.C., for Respondent-Intervenor Hafslund Energy Trading LLC.

Catherine M. Krupka and Alexandra D. Konieczny, Sutherland Asbill & Brennan LLP, Washington, D.C., for Respondents-Intervenors Merrill Lynch Capital Services, Inc. and Commerce Energy Inc.

William E. Schroeder and Aliya M. McLendon, Sullivan & Cromwell, LLP, New York, New York, for Respondent-Intervenor Koch Energy Trading, Inc.

Gordon A. Coffee and Steffen N. Johnson, Winston & Strawn LLP, Washington, D.C., for Respondent-Intervenor Allegheny Energy Supply Company LLC.

**OPINION**

THOMAS, Chief Judge:

Petitioners, the people of the state of California through their Attorney General Kamala D. Harris, the California Public Utilities Commission, Pacific Gas & Electric Company, and Southern California Edison ("the California Parties"), seek review of a series of orders issued by the Federal Energy Regulatory Commission ("FERC" or "the Commission") on remand following our decision in *California ex rel. Lockyer v. FERC* ("*Lockyer*"), 383 F.3d 1006 (9th Cir. 2004). There, we held that FERC may authorize market-based energy tariffs, so long as that regulatory framework incorporates both an ex ante market power analysis and enforceable post-approval transaction reporting. *Id*. at 1014. We remanded the case because FERC had not appropriately implemented the market-based tariff. *Id*. at 1015.

In this case, the California Parties petition for review of FERC's actions after our remand, claiming that FERC failed to follow *Lockyer* and violated the Federal Power Act ("FPA") by requiring proof of excessive market share as a necessary condition for relief for transaction reporting violations.

We conclude that FERC structured the remand proceedings in a manner contrary to the terms of our *Lockyer* decision. Enforceable transaction reporting is a necessary ingredient of a lawful market-based tariff. *Id*. By insisting on proof of market concentration under its hub-and-spoke test as a precondition to any relief for reporting deficiencies, FERC omitted a necessary component of the market-based

tariff approved in *Lockyer*. Reliance on the hub-and-spoke market share measure alone immunizes sellers from any consequence for failure to report market transactions and ignores the agency's statutory charge under § 205 of the FPA: to determine whether sellers charged a "just and reasonable" rate. 16 U.S.C. § 824d(a). We therefore grant the petition for judicial review and remand to the agency for further proceedings.

I

The essence of the California Parties' complaint is presented in some detail at the outset of our *Lockyer* decision. *See* 383 F.3d at 1008–11. A summary of our *Lockyer* decision and an exposition of events that transpired before FERC on remand follows.

A

In *Lockyer*, we denied the California Parties' facial challenge to market-based ratemaking. *Id*. at 1013. We held that the agency's segmented approach, which requires an ex ante finding of an absence of market power coupled with regular transaction reports, does not *per se* violate the FPA. *Id*. at 1012–13. However, we granted the California Parties' as-applied challenge, holding that FERC's enforcement and review of market-based rates during the 2000–01 California energy crisis was unlawful. *Id*. at 1014. We held that FERC abdicated its regulatory responsibility by summarily dismissing electricity wholesalers' failure to comply with reporting requirements. *Id*. at 1014–15. "[B]ecause the reporting requirements [are] an integral part of a market-based tariff that . . . pass[es] legal muster, FERC cannot dismiss the requirements as mere punctilio." *Id*. at 1015. We

remanded to FERC to reconsider the California Parties' claim for a refund of the amount sellers charged in excess of just and reasonable rates during the crisis. *Id*. at 1018.

B

On remand, FERC ordered

> a trial-type hearing before an ALJ to make findings of fact regarding whether, based on the facts and circumstances associated with each individual seller, that seller's improper or untimely filing of its quarterly transaction reports masked an accumulation of market power such that the market rates were unjust and unreasonable, during the relevant period . . . .

*California ex rel. Lockyer v. B.C. Power Exch. Corp.*[1] ("Mar. 21, 2008 Order"), 122 FERC ¶ 61,260, 62,504–05 (Mar. 21, 2008). FERC defined the threshold issue for the ALJ proceeding as whether sellers accumulated market power and set parameters for the ALJ to use in conducting that inquiry. *Id*. at 62,505–06. Specifically, FERC limited the market power assessment to whether a seller, under the hub-and-spoke test, "did or did not gain an increased generation market share sufficient to give it the ability to exercise market power and cause market-based rates to be unjust and

---

[1] Because all remand proceedings are captioned thusly before the agency, to avoid confusion, *hereinafter* each is denominated by reference to the date and title of the document.

unreasonable as a result."[2]  *Id*. at 62,505.  Other claims of tariff violations, such as gaming and anomalous bidding behavior, were off the table.  *Id*. at 62,505 n.65.  The Commission reserved determination of the remedy for violations by each particular seller, if any.  *Id*. at 62,505.

The California Parties urged FERC to reconsider its definition of the objective of the ALJ proceeding, claiming that the Commission's decision to focus on identifying sellers' market power based on market share levels stood contrary to the FPA, our remand instructions in *Lockyer*, and agency precedent.  *See* Oct. 6, 2008 Order, 125 FERC ¶ 61,016, 61,040.  The state claimed that FERC's initial order on remand unjustifiably collapsed the two-tiered approach approved in *Lockyer* by conflating the ex ante market power determination and the ex post reporting requirement.  *Id*.  It identified FERC decisions holding that the purpose of market-based rate quarterly transaction reporting is to meet the filed rate requirements of the FPA, evaluate the reasonableness of rates, and monitor sellers' market power on an ongoing basis.  *Id*.  Furthermore, the California Parties argued that the hub-and-spoke test prescribed by the agency was an inadequate screen for market power.  *Id*.

FERC denied rehearing.  *Id*.  The Commission declared the state's claims an impermissible collateral attack on the market power analysis FERC used at the time of the transactions and explained that the purpose of market-based

---

[2] The hub-and-spoke test considers a seller's market share of installed and uncommitted generation capacity in its control area market and each control area market to which it is directly interconnected and finds the potential for market power where the seller holds a market share of 20 percent or more in each relevant market.  *Id*. at 62,505 n.70.

quarterly reports "is not to re-run the Commission's market power screens, but rather . . . to monitor and evaluate market concentration on an ongoing basis." *Id*. at 61,040–41. FERC rejected the state's suggestion that the hub-and-spoke test was an inappropriate screen for market power, claiming that it must use only those standards in effect at the time of the reviewed transactions. *Id*. at 61,041–42.

The California Parties also argued that FERC erred in its March 21, 2008 Order by excluding evidence of other tariff violations and market manipulation from the ALJ proceeding. *Id*. at 61,042. The California Parties sought to introduce evidence of alternative analyses of market power and market function, based on information presented in sellers' reports, to show a nexus between deficient reporting, market function, and market power. *Id*. FERC denied rehearing on this issue because other potential seller misconduct, such as gaming and anomalous bidding, was the subject of another proceeding before the agency, which it determined should remain distinct and separate. *Id*.

Shortly thereafter, the California Parties again requested rehearing regarding the evidentiary basis for its reporting allegations. Dec. 28, 2009 Order, 129 FERC ¶ 61,276, 62,530. The California Parties again sought to introduce evidence of market manipulation and tariff violations, explaining that these concerns were not adequately addressed by other proceedings before FERC. *Id*. FERC denied the request as an impermissible request for rehearing of an order denying rehearing. *Id*. The Commission also reasoned that the California Parties' argument about the scope of evidence in the remand proceeding was incongruous with evidence of deficient reporting presented in the original complaint. *Id*. at 62,531. The Commission definitively limited the allegations

to be considered in the ALJ proceedings to the California Parties' reporting and hub-and-spoke market power claims, not allegations of market manipulation or other measures of market power. *Id*.

C

After briefing and submission of written testimony, but without hearing argument, the ALJ granted sellers' motions for summary disposition in an Initial Decision issued March 18, 2010. 130 FERC ¶ 63,017, 66,159–62. After crediting the California Parties' evidence of reporting violations, the ALJ ruled in the sellers' favor because the state did not demonstrate that sellers accumulated market power under the hub-and-spoke test. *Id*. at 66,162. The ALJ reasoned that "[a]bsent a showing by the California Parties in their direct testimony that each [seller] possessed generation market power under the Commission's hub-and-spoke test, no material factual issues remain for hearing on the central issue in this proceeding." *Id*. at 66,195. The ALJ set aside the California Parties' seller misconduct and alternative market power analyses as outside the scope of the proceeding and contrary to sellers' due process right to notice. *Id*. at 66,194.

In a May 4, 2011 Order, the Commission affirmed the ALJ decision. 135 FERC ¶ 61,113. The Commission rested on its previous rulings on the California Parties' exceptions and objections. *Id*. at 61,655–56. FERC reasoned, "[g]iven that the issue of whether suppliers accumulated market power was the threshold issue in this proceeding, and given the California Parties' failure to offer any evidence to demonstrate the accumulation of market power under the hub-and-spoke standard, summary disposition was appropriate." *Id*. at 61,655. The Commission later denied the

California Parties' request for rehearing. June 13, 2012 Order, 139 FERC ¶ 61,211. This petition followed shortly thereafter.

II

We have jurisdiction to hear this petition for judicial review pursuant to § 313(b) of the FPA. 16 U.S.C. § 825*l*(b). The California Parties timely filed this petition on June 20, 2012. *See id.* "Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part." *Id.*

We review FERC decisions to determine whether they are "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or not in accordance with the law." *Cal. Dep't of Water Res. v. FERC*, 341 F.3d 906, 910 (9th Cir. 2003). "The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive." 16 U.S.C. § 825*l*(b). Questions of law are subject to de novo review. *Am. Rivers v. FERC*, 201 F.3d 1186, 1194 (9th Cir. 1999). FERC's interpretation of the FPA is reviewed under the deferential framework in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984). *Port of Seattle, Wash. v. FERC*, 499 F.3d 1016, 1026 (9th Cir. 2007). However, "*Chevron* does not require blind deference; the Supreme Court has articulated a more thorough and nuanced approach." *Lockyer*, 383 F.3d at 1016. When considering "whether Congress has directly spoken to the precise question at issue," *Chevron*, 467 U.S. at 842, this court is guided by statutory context and "common sense as to the manner in which Congress is likely to delegate a policy

decision." *Lockyer*, 383 F.3d at 1016–17 (citation and internal quotation marks omitted).

## III

Adjudication of the petition turns on interpretation of § 205 of the FPA, which commands that "any . . . rate or charge that is not just and reasonable is hereby declared to be unlawful." 16 U.S.C. § 824d(a). Although "[o]ur role in determining whether rates are just and reasonable is limited," *Mont. Consumer Counsel v. FERC*, 659 F.3d 910, 918 (9th Cir. 2011), in *Lockyer*, we held that § 205 authorizes FERC to order retroactive refunds for seller reporting failures, based on the "integral nature" of reporting requirements to a lawful, i.e., "just and reasonable," market-based tariff, 383 F.3d at 1014–16. The structure of the remand proceedings is not square with this conclusion. We remanded the matter to FERC "to reconsider its remedial options in the first instance," *id*. at 1018, observing that "FERC may elect not to exercise its remedial discretion by requiring refunds, but it unquestionably has the power to do so," *id*. at 1016. FERC abdicated its discretion by structuring the remand proceedings in a manner that prevented any meaningful review of sellers' failure to file transaction reports during the crisis.

FERC held that the California Parties' "failure to offer any evidence to demonstrate the accumulation of market power under the hub-and-spoke standard" foreclosed relief. May 4, 2011 Order, 135 FERC ¶ 61,113, 61,655. By granting summary disposition to the sellers, the Commission denied the California Parties' claims that reporting deficiencies violated the FPA and justified refunds of amounts sellers charged in excess of the just and reasonable rates. By structuring the remand proceedings in this manner,

predicating the "just and reasonable" inquiry required under § 205 on accumulation of market power under the hub-and-spoke test, FERC insulated sellers from liability for reporting violations and thereby ran afoul of the FPA.  FERC casts market power identified solely through excessive market share as a necessary condition to conclude that a seller's rate is unjust or unreasonable.  This view undercuts the essential importance of transaction reporting and the distinct purpose of each prong of a viable market-based tariff system.  In *Lockyer*, when we deemed FERC's market-based ratemaking approach a viable extension of the agency's authority under the FPA, we went to great lengths to distinguish market-based regulatory schemes rejected by the Supreme Court in *MCI Telecommunications Corp. v. AT&T*, 512 U.S. 218 (1994), and *Maislin Industries U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116 (1990).  *See Lockyer*, 383 F.3d at 1013.  "The structure of the tariff complied with the FPA, so long as it was coupled with enforceable post-approval reporting that would enable FERC to determine whether the rates were 'just and reasonable' and whether market forces were truly determining the price." *Id*. at 1014. "[T]he crucial difference between *MCI/Maislin* and the present circumstances is the dual requirement of an ex ante finding of the absence of market power *and* sufficient post-approval reporting requirements." *Id*. at 1013 (emphasis in original).

Our discussion of the California Parties' as-applied challenge in *Lockyer* underscores the independence and import of each prong of the analysis.  In testing FERC's claim that reporting violations were mere compliance issues, we observed that each prong of the framework serves a different purpose.  Enforceable post-approval reporting is necessary to enable FERC to determine whether sellers' rates complied with § 205 and to investigate whether market forces truly

determined the rate charged. *Id*. at 1014. Without "active ongoing review" brought about by an enforceable transaction reporting requirement, "the only arguably serious regulatory screening that exists is FERC's initial determination with respect to a seller's market power—a determination that may bear little or no relation to the realities of subsequent circumstances." *Id*. at 1017. We went on to observe that the FPA remedial scheme comports only with a dual-track regulatory framework because market-based ratemaking premised solely on an initial analysis of market power would eliminate retrospective refund relief under the Act. *Id*.

FERC erred by structuring the remand proceedings to focus exclusively on market-share evidence of market power. By doing so, FERC unlawfully administered the market-based tariff. "If the ability to monitor the market, or gauge the 'just and reasonable' nature of the rates is eliminated, then effective federal regulation is removed altogether. Without the required filings, neither FERC nor any affected party may challenge the rate. Pragmatically, under such circumstances, there is no filed tariff in place at all." *Id*. at 1015–16.

In addition to ignoring our remand instructions, FERC's interpretation is at odds with the position it took in the initial appeal. There, "FERC . . . affirmed . . . that it is not contending that approval of a market-based tariff based on market forces alone would comply with the FPA or the filed rate doctrine." *Id*. at 1013. FERC argued that the presence of reporting requirements differentiated its market-based tariffs from those rejected by the Court in *MCI* and *Maislin*, and this court agreed. *Id*. In fact, even before *Lockyer*, in its initial order on the complaint FERC stated that "[a]fter-the-fact quarterly reports provide a means for spotting price trends, discriminatory patterns, or other indicia of the exercise of

market power."   May 31, 2002 Order, 99 FERC ¶ 61,247, 62,063.  As we said once before, "FERC cannot have it both ways." *Lockyer*, 383 F.3d at 1016.  "If the tariff is interpreted as FERC urges here, then the tariff runs afoul of *Maislin*, the filed rate doctrine, and the FPA."  *Id*.

FERC argues that the reasonableness of market-based rates charged by sellers without market power, as measured by market share, cannot be challenged.  It therefore claims that following an alleged reporting violation, analysis of a seller's market share alone is sufficient.  For this proposition the Commission cites a paragraph in *Lockyer* that describes two D.C. Circuit decisions approving market-based ratemaking in the market for natural gas and wholesale electricity.  *See id*. at 1012–13.  However, FERC takes that passage out of context.  Those cases involve a traditional bilateral transaction, that is, a bargained-for exchange between an interested buyer and willing seller.  *Id*.  That is not directly analogous to the factual circumstances here involving clearinghouse sales during the energy crisis.  *See id*. at 1008–10.

FERC also cites *Blumenthal v. FERC*, 552 F.3d 875, 882 (D.C. Cir. 2009), but makes no effort to explain its relevance to its claim that the rate charged by sellers without hub-and-spoke market power is *per se* "just and reasonable." *Blumenthal* concerns a different factual circumstance: Connecticut's challenge to FERC's approval of a "'hybrid' market, in which some electricity generators sell power at regulated rates and others at market rates."  *Id*. at 878.  Even so, the D.C. Circuit relied on FERC's requirement of "quarterly and annual reports assessing the competitiveness of the market based on transactional data reflecting the behavior of each market participant."  *Id*. at 882.  The court

explained that its holding approving of the "hybrid" market structure comports with *Lockyer* by requiring "[r]egular reports based on 'transaction-specific data[.]'" *Id*. "FERC violates its oversight duty when it imposes no reporting requirements on generators and instead resorts to 'largely undocumented reliance on market forces as the principal means of rate regulation.'" *Id*. (quoting *Farmers Union Cent. Exch., Inc. v. FERC*, 734 F.2d 1486, 1508 (D.C. Cir. 1984) (footnote omitted)). Because it recognizes the necessity and intrinsic value of transactional reporting, *Blumenthal* does not support the proposition FERC presents.

The record on remand demonstrates that FERC did not "examine the relevant data and articulate a satisfactory explanation for its action" and thereby did not meet its burden to engage in reasoned decisionmaking. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The manner in which FERC structured the proceedings on remand is arbitrary, capricious, and otherwise not in accordance with law. The agency collapsed a lawful two-step market-based tariff to an impermissible one-step inquiry focused solely on whether a seller controlled 20 percent of the generation market in its hub-and-spoke area. FERC may not limit its review of the reporting deficiencies to the hub-and-spoke market power screen. To fully consider whether a reported rate was just and reasonable, the agency must consider claims and evidence beyond the hub-and-spoke analysis.

FERC attempts to justify its position by claiming that the California Parties' claims have been addressed in other proceedings. For example, FERC stated that "this proceeding focuses solely on violations of our quarterly transaction reports as a basis for potential refund liability . . . this is not

a proceeding to address other potential tariff violations (such as gaming and anomalous bidding behavior), which is the subject of the *CPUC* proceeding."[3]  Oct. 6, 2008 Order, 125 FERC ¶ 61,016, 61,042; *see also* Mar. 18, 2010 Initial Decision, 130 FERC ¶ 63,017, 66,194; Mar. 21, 2008 Order, 122 FERC ¶ 61,260, 62,505 n.65.  The California Parties counter that the agency is playing a shell game, artificially limiting the scope of these proceedings and promising that excluded claims will be addressed elsewhere.  They argue that this limitation excluded their evidence that sellers exercised market power in ways not detected by the 20-percent hub-and-spoke test. Specifically, the California Parties argue that evidence of sellers' actual market positions, gaming, anomalous bidding behavior, and other market manipulation is relevant to determining whether rates were "just and reasonable" and whether "market forces were truly determining the price."

An agency errs when it "entirely fail[s] to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.  FERC framed the issue in this appeal as whether deficient reporting masked an accumulation of market power such that the market rates charged were unjust and unreasonable.  By requiring the California Parties to demonstrate that a seller exercised market power solely by reference to the hub-and-spoke test, FERC ignored other important aspects of the problem of market power masked by

---

[3] *Pub. Utils. Comm'n of the State of Cal. v. FERC* ("*CPUC*"), 462 F.3d 1027 (9th Cir. 2006).  Before the agency, *CPUC* is denominated *San Diego Gas & Electric Co. v. Sellers of Energy and Ancillary Services Into Markets Operated by the California Independent System Operator Corporation and the California Power Exchange* ("*SDG&E*").  *SDG&E*, 149 FERC ¶ 61,116, 2014 WL 5860025 (Nov. 10, 2014).

deficient reporting. This is so regardless of the Commission's consideration of manipulation claims in *CPUC*. FERC entered a final order authorizing refunds for manipulative tariff violations in the *CPUC* remand proceedings on November 10, 2014. *SDG&E*, 149 FERC ¶ 61,116. These proceedings did not concern the nexus between manipulative conduct and reporting violations, however. *SDG&E*, 135 FERC ¶ 61,183, 62,088 (May 26, 2011). The existence of widespread reporting violations and market manipulation by sellers during the 2000–01 crisis has been established. *See Lockyer*, 383 F.3d at 1014 ("[N]on-compliance with FERC's reporting requirements was rampant throughout California's energy crisis. FERC itself has acknowledged that during the height of the energy crisis the quarterly reports of several major wholesalers failed to include the transaction-specific data through which the agency at least theoretically could have monitored the California energy market[.]"); *SDG&E*, 149 FERC ¶ 61,116, 2014 WL 5860025 at *13 (finding "34,020 . . . transactions that constituted tariff violations, more than 20,000 affected the market clearing prices"). While the nexus of these findings may be unclear at this juncture, the merits of that issue are not now before the court. FERC granted summary disposition without considering this argument or any evidence in support. We therefore remand to the agency with instructions to evaluate reporting deficiencies and related market-based rates to determine whether they were unjust and unreasonable in light of the California Parties' nexus claims. The California Parties' manipulation claims are integral to their allegation that reporting deficiencies fostered the subtle accumulation of market power and resulted in an excessive rate. This claim has not yet been tested by FERC and it is most appropriate for the agency to resolve the question in the

first instance.  *See SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943).[4]

Whether the California Parties' claims have been resolved in other proceedings is also a merits question that must be resolved by the agency.  The Commission has recognized its capacity to "be cognizant of the factual scope of each proceeding and the ramifications of [its] actions here on other, related proceedings."  Oct. 6, 2008 Order, 125 FERC ¶ 61,016, 61,042.  That awareness does not translate into authority to sidestep due process and reasoned analysis for claims the agency believes have been litigated and decided in other proceedings.  Obviously, parties are not entitled to double recovery, but that is an analysis that the agency can undertake on remand.  This opinion does not address the question of potential refunds from sellers who were not themselves responsible for any manipulation that FERC may determine occurred, but who may have benefitted from it.  This issue is appropriately within FERC's province in the first instance.

In summary, FERC's response to *Lockyer*, that refunds are unavailable because no seller exercised market power under the hub-and-spoke test, falls short.  When we approved market-based ratemaking in *Lockyer* we repeatedly emphasized the importance of "the dual requirement of an ex ante finding of the absence of market power *and* sufficient post-approval reporting requirements." *Lockyer*, 383 F.3d at

---

[4] We are aware of Respondents-Intervenors' claim that *Morgan Stanley Capital Group Inc. v. Public Utility District No. 1 of Snohomish County*, 554 U.S. 527 (2008), bars relief for reporting deficiencies in the context of bilateral CERS transactions.  This merits argument is also most appropriately addressed by FERC in the first instance.

1013. After FERC dismissed sellers' widespread reporting deficiencies as a mere compliance issue, we granted the state's petition for judicial review and remanded this case to correct the oversight. On remand, FERC structured the proceedings so as to again deny the intrinsic import of transaction reporting.

We therefore remand to the agency once again for adjudication of the complaint in a manner that respects the *Lockyer* mandate and the FPA. To remedy reporting violations, FERC must review the transaction reports to determine whether a just and reasonable price was charged by each seller, with specific attention to whether reporting deficiencies masked manipulation or accumulation of market power. If so, FERC may then elect to exercise its remedial discretion as appropriate. "The FPA cannot be construed to immunize those who overcharge and manipulate markets in violation of the FPA." *Id*. at 1017.

**PETITION GRANTED; REMANDED.**